**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
<u>JACKSONVILLE DIVISION</u>**

In re

RENATE L. WALLACE,                                  Case No.: 09-bk-594-PMG

      Debtor.                                                   Chapter 7

_____/

**<u>ORDER GRANTING DEBTOR'S MOTION FOR CONTEMPT AND SANCTIONS</u>**

This case came before the Court for an evidentiary hearing on the Motion of the Debtor, Renate L. Wallace, for Contempt and Sanctions against IndyMac Federal Bank, FSB and its affiliate, IndyMac Mortgage Services, a division of OneWest Bank, FSB (collectively, "IndyMac"). The Debtor seeks compensatory and punitive damages for violations of the discharge injunction of 11 U.S.C. § 524. Upon the evidence presented, the Court finds it appropriate to grant the Debtor's Motion.

**Background**

On January 30, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

On the Petition Date, the Debtor owned real property, encumbered by a mortgage in favor of IndyMac, located at 14712 Stacey Road, Jacksonville, Florida (the Stacey Road Property). The Stacey Road Property was the subject of a state court foreclosure action that was filed on December 12, 2008, in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida. (Debtor's Ex. 14). The Stacey Road Property was not listed as the Debtor's homestead,

and was not claimed as exempt from the property of her estate. (Debtor's Exhibit 1, Schedules A and C).

IndyMac was listed as a secured creditor in the Debtor's schedules and was served with a Notice of Commencement of the Chapter 7 case (Debtor's Exhibits 1 and 2).

On May 27, 2009, the Debtor was discharged from her prepetition debts and copies of the discharge were furnished to all creditors and parties in interest, including IndyMac. (Debtor's Exhibits 3, 4). On September 8, 2009, the Trustee filed a Notice of Intention to Abandon Property, including the Stacey Road Property. (Doc. 29).

On December 2, 2009, IndyMac sent a collection letter to the Debtor at her home address, stating among other things, that " . . . as of the date of this letter, you owe a balance of $377754.32. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be different from the amount above. . . . Unless, within thirty days after receipt of this notice, you dispute the validity of the debt or any portion thereo, we will assume the debt to be valid." On the second page of the letter is the following statement: "This company is a debt collector. We are attempting to collect a debt and any information obtained will be used for that purpose. However, if your debt has been discharged pursuant to the Bankruptcy laws of the United States, this communication is intended solely for informational purposes." (Debtor's Exhibit 6).

On December 10, 2009, the Debtor's attorney wrote a letter to IndyMac. In the letter, he advised IndyMac that Ms. Wallace had filed a Chapter 7 bankruptcy case, he supplied the location of the court in which the case was filed and the case number, he stated that "Ms. Wallace was

discharged from her pre-petition debts on May 27, 2009," and he requested IndyMac to "Please update your records accordingly." (Debtor's Exhibit 7).

On April 20, 2010, IndyMac sent a billing statement to the Debtor at her home address, stating that "Your Account is Past Due" and advised her of the past due amount: "After 05/16/10 please pay: $50,704.60." On the second page of the billing statement is the following statement: "This company is a debt collector and any information obtained will be used for that purpose. However, if you have filed a bankruptcy petition and there is either an 'automatic stay' in effect in your bankruptcy case, or your debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes." (Debtor's Exhibit 8).

On April 30, 2010, the Debtor's attorney wrote IndyMac again, reiterating that the Debtor had filed a Chapter 7 case and received a discharge, and advising IndyMac that "Ms. Wallace is an elderly woman in poor health, and your continued invoicing and demand letters related to this debt are distressing her.  You will leave us with little choice but to seek sanctions if you fail to cease dunning her for this discharged obligation."

May 10, 2010, the Debtor's attorney filed this Motion for Contempt and Sanctions, stating that in addition to the collection letter and billing notice, IndyMac's "collection efforts included threatening phone calls, the most recent of which occurred last week."

A preliminary hearing on the motion was set for June 30, 2010.

On June 23, 2010, attorneys for IndyMac wrote to the Debtor at her home address sending "a copy of the demand letter, payment history, and collection note in regards to our Response to

...

Defendant's Request for Production dated June 23, 2010."[1]  Enclosed were copies of an earlier demand letter, and a copy of a letter dated June 30, 2010, indicating that "IndyMac will review your request for assistance"[2] upon receipt of several items.  Also enclosed with the letter was a "Consolidated Notes Log" dated 6/8/10 showing that IndyMac had made numerous calls regarding the loan.  A note entry in the log from August 11, 2009, indicates that IndyMac was advised of the bankruptcy discharge, and a note entry from February 25, 2010, indicates that IndyMac was advised that the borrower has an attorney handling the case.

There was no appearance for IndyMac at the Preliminary hearing on June 30, 2010, so a final evidentiary hearing on the motion for contempt was set for September 2, 2010.

On July 17, 2010, IndyMac sent another billing statement to the Debtor at her home address, stating that "Your Account is Now 25 Payments Past Due" and "After 08/16/10 please pay: $72,247.25."[3] (Debtor's Exhibit 11).

On August 18, 2010, IndyMac sent another billing statement to the Debtor at her home address, stating that "Your Account is Now 26 Payments Past Due" and "After 09/16/10 please pay: $79,506.80."[4] (Debtor's Exhibit 12).

On September 2, 2010, a Thursday, the final evidentiary hearing was called and IndyMac was represented at the hearing. The Debtor's attorney began: " . . . the first objective is to get the harassing phone calls and dunning letters to stop. . . . Ironically, she got one as recently as

---

[1] There is no indication in the record that the Debtor or her attorney had made a Request for Production.
[2] When directed to the statement in the letter that the letter makes reference to a request received from the Debtor for assistance with her loan, the Debtor responded: "I didn't ask for it." (Tr. p. 33).
[3] Although the second page of this billing statement is not in the record, the Debtor acknowledged that the statement was in the same format as the statement dated April 20, 2010, and consequently contained the provision that if her debt has been discharged the statement is "solely for informational purposes." (Tr. p.32).
[4] See footnote 3.

Tuesday. Two days before the sanction hearing, she's getting harassing calls. . . . And, you know, still getting the dunning letters. Our main objective is to get them stopped." (Tr. p.4). The attorneys asked to continue the hearing to a later date so the parties could try to resolve the matter, and the evidentiary hearing was continued to October 7, 2010.

On September 20, 2010, IndyMac sent another billing statement to the Debtor at her home address, stating that "Your Account is Now 1 Payment Past Due" and "After 10/16/10 please pay: $86,450.35."[5] (Debtor's Exhibit 13).

On October 7, 2010, the continued final evidentiary hearing on the Motion was held. The Debtor testified about the many telephone calls and billing statements that she had received, and testified about the effect that they have had on her. The Debtor, a 76 year old retiree, testified that IndyMac's continual post-discharge collection efforts caused her great distress and compounded the embarrassment and anxiety she was already experiencing as a result of filing for bankruptcy. Specifically, the Debtor testified that she continued to receive calls from IndyMac almost every day after the filing of her petition and that the repeated calls put "a lot of stress" on her. (Tr. pp, 16, 18). The Debtor stated "I never thought in my life ... I would have to file bankruptcy," and that "[i]t's a lot of stress when you're trying to cope with things and trying to put things behind you. And it's constant harassment." [Tr. p. 18]. The Debtor further explained that the individuals making the collection calls on behalf of IndyMac were "very aggressive. And even after I would tell them it is in bankruptcy, it is out of my hands, there is nothing I can do . . . " they kept asking me "[w]ell what are you going to do about the payments?"

---

[5] See footnote 3.

When questioned by her attorney as to what it was about the telephone calls and letters that was upsetting, the Debtor candidly explained that "It's – it has been so difficult to deal with this whole situation so that every time a letter comes or, particularly, a phone call comes it just brings everything back up. And I'm stressed out. I just – I just don't understand after they have been told again and again and again. And I try to be very polite on the phone when they are just yelling almost that – it's so stressful." (Tr. 44).

After hearing the evidence, the Court took the matter under advisement.

On October 20, 2010, approximately two weeks after the evidentiary hearing on the Motion for Contempt and Sanctions, IndyMac sent another billing statement to the Debtor at her home address, stating that "Your Account is Now 28 Payments Past Due" and advised her of the past due amount: "After 11/16/10 please pay: $93,767.90."[6]

The Debtor filed a Motion to Supplement the Record in Connection with Debtor's Motion for Contempt and Sanctions Against Indymac Federal Bank, FSB and its Affiliate IndyMac Mortgage Services. (The Motion to Supplement)(Doc. 57). On December 6, 2010, the Court held a hearing on the Motion and subsequently entered an order granting the Motion to Supplement and authorizing the Debtor "to supplement the record to include into evidence as Exhibit 17 the October 20, 2010 billing statement sent to Renata L. Wallace from IndyMac."[7] (Doc. 60).

---

[6] See footnote 3.
[7] On March 1, 2011, the Debtor filed a Second Motion for Contempt and Sanctions Against IndyMac Federal Bank, FSB and its Affiliate Indymac Mortgage Services (the Second Motion for Contempt). (Doc. 62). The Second Motion for Contempt alleges that IndyMac sent an "Insurance Demand Letter" to the Debtor on February 17, 2011. The Court has not yet held a hearing on the Motion nor has IndyMac filed a response.

The Debtor seeks compensatory damages for attorney's fees in the amount of $5,950.00, and $5,000.00 for emotional distress. As a deterrent for future misconduct, the Debtor also seeks an award of $15,000.00 in punitive damages.

## Discussion

The Debtor requests that sanctions be imposed against IndyMac pursuant to 11 U.S.C. Sections 105(a) and 524(a) for its willful violations of the discharge injunction. The Debtor has the burden of proof to establish IndyMac violated the discharge injunction and that its violations were willful, as defined by the Eleventh Circuit. See In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996).

### A. Standard of Proof

Some bankruptcy courts require proof by preponderance of the evidence because the discharge injunction imposed by § 524(a) is enforced by way of § 105(a), rather than directly, as in proceedings termed "civil contempt." In re Al-Jiboury, 344 B.R. 218, 223 (Bankr. D. Mass. 2006); see also, In re Glenn, 2010 WL 2203042, *2 (Bankr. S.D. Ala. May 28, 2010)("Proof must be by a preponderance of the evidence, except perhaps the civil contempt request. Many cases state that civil contempt requires clear and convincing evidence.")(internal citations omitted). In re Thompson, 2010 WL 1850232, *15 (Bankr. M.D. Fla. May 6, 2010)("Bankruptcy Courts typically apply the preponderance of the evidence standard of proof in discharge violation matters, but some apply the clear and convincing standard of proof."); Grogan v. Garner, 498 U.S. 279, 286 (1991)(applying the preponderance of the evidence standard and explaining, "We are unpersuaded by the argument that the clear-and-convincing standard is required to effectuate the

'fresh start' policy of the Bankruptcy Code"). The Eleventh Circuit has determined that "[a] finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated." Jove Eng'g Inc. v. I.R.S. (In re Jove Eng'g Inc.), 92 F.3d 1539, 1545 (11th Cir. 1996).

In this Case, the evidence presented meets either standard. The Debtor has established that IndyMac willingly and repeatedly violated the discharge injunction. Accordingly, the Debtor is entitled to an award of actual and punitive damages.

**B. Discharge Injunction of 11 U.S.C. § 524**

Section 524(a) provides:

**11 U.S.C. § 524  Effect of discharge**

(a) A discharge in a case under this title-

> (1) voids any judgment at any time obtained, to <u>the extent that such judgment is a determination of the personal liability</u> of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, <u>recover</u> or offset <u>any such debt as a personal liability of the debtor</u>, whether or not discharge of such debt is waived;

Section 524(a) of the Bankruptcy Code provides that a discharge in a bankruptcy case operates as an injunction against the commencement or continuation of any action to collect a discharged debt from the debtor. 11 U.S.C. § 524(a)(2). "Section 524(a) is a broad injunction power which effectively bars creditors from collecting debts as personal liabilities from a discharged debtor." In re Meyers, 344 B.R. 61, 64 (Bankr. E.D. Pa. 2006).

### (i) Pursuant to § 105(a) the Court is authorized to utilize its equitable powers to enforce the discharge injunction of § 524

Unlike 11 U.S.C. Section 362, Section 524 does not contain an express provision authorizing an award of actual damages as a remedy for violations of the discharge injunction. See In re Hardy, 97 F.3d at 1389 (section 524 "does not specifically authorize monetary relief."); In re Nassoko, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009)("Section 524 does not include an explicit enforcement mechanism.").

"Historically, Courts have referred to the remedy provided by § 362(k) as a private right of action, and noted the absence of a parallel provision in § 524." In re Wynne, 422 B.R. 763, 768 (Bankr. M.D. Fla. 2010) "[I]n contrast to section 362(h) [now § 362(k)], which remedies violations of the automatic stay by mandating actual damages, ... section 524 is silent with respect to a private right of action for debtors injured by a creditor's violation of the discharge injunction." In re Meyers, 344 B.R. at 64.

"It is widely accepted, however, that Bankruptcy Courts may invoke their statutory contempt power under § 105 to provide a remedy for willful violations of the discharge injunction."[8] In re Wynne, 422 B.R at 768. "It is well settled that this Court has the inherent power to award compensatory damages for willful violations of the automatic stay as this falls within the ambit of the bankruptcy court's civil contempt power." In re WVF Acquisition, LLC, 420 B.R. 902 (Bankr. S.D. Fla. 2009), see also In re Hardy, 97 F.3d at 1389, In re Nassoko, 405 B.R. at 520. "In other words, even though § 524 does not expressly authorize a 'private right of action' for violations of the discharge injunction, courts may exercise their contempt power under

---

[8] Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" Title 11. 11 U.S.C. § 105(a).

§ 105 to enforce the provisions of § 524." In re Wynne, 422 B.R. at 768; see also, In re Singleton, 269 B.R. 270, 275 (Bankr. D.R.I. 2001)("it is now clear that 11 U.S.C. § 105(a) authorizes the Bankruptcy Court to utilize its equitable powers to enforce the § 524(a) discharge injunction.").

Conduct is deemed willful if the creditor: "(i) knew that the discharge injunction was invoked and (ii) intended the actions that violated the discharge injunction." Hardy, 97 F.3d at 1390; see also Jove, 92 F.3d at 1555 (quoting Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1535 (11th Cir. 1986)) ("Willfulness generally connotes intentional action taken with at least callous indifference for the consequences."). The willfulness requirement refers to the deliberateness of the creditor's conduct and its knowledge of the bankruptcy filing. Davis v. United States (In re Davis), 201 B.R. 835, 837 (Bankr. S.D. Ala. 1996).

Despite having notice of the Debtor's bankruptcy filing and her subsequent discharge, IndyMac repeatedly attempted to collect its pre-petition debt from the Debtor personally by contacting the Debtor over the telephone and through the mail. IndyMac's actions continued despite the attempts made by Debtor's counsel for IndyMac to cease contacting her. For example, in a letter of April 30, 2010, Debtor's counsel reiterated to IndyMac that the Debtor had received a discharge and referenced the emotional distress the collection attempts were causing his client "an elderly woman in poor health." (Debtor's Ex. 9).

The "solely for informational purposes" statement on the notices might prevent or mitigate an award of sanctions if the notices and telephone calls had ceased after the written request from

the Debtor's attorney. Also, there may be circumstances where a debtor who has been discharged from a loan obligation needs to know the amounts due. But in this case IndyMac has offered no explanation as to why the Debtor needs to be continuously advised of the number of payments that she did not make, or the amount of her delinquency, or how much she must pay with her next payment on a loan that has been discharged. Additionally, the evidence in the record is that IndyMac made numerous aggressive collection calls, even after it knew that the Debtor had been discharged from the debt. The billing statements in conjunction with the collection calls indicate that IndyMac was attempting to collect the debt.

The record clearly establishes that IndyMac's conduct was a continuing violation of the discharge injunction, and that its actions were willful. In fact, IndyMac's collection efforts against the Debtor continued during the settlement negotiations and even after the trial on the Motion for Contempt and Sanctions. Accordingly, the Debtor is entitled to an award of damages resulting from IndyMac's violation of the discharge injunction.

**(a) Damages awarded for attorney's fees**

An award of attorney's fees under federal law is based on the lodestar method of computation. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-718 (5th Cir. 1974). To determine whether an attorney's fee is reasonable the "lodestar," which is the product of the number of hours reasonably expended and a reasonable hourly rate, must be determined. See John Deere Co. v. Deresinski (In re Deresinski), 250 B.R. 764, 768 (Bankr. M.D. Fla. 2000). Contemporaneous time records detailing the dates, amount, and specific services provided must be given to the court in order for the lodestar method to be applied. Nibbelink, 403 B.R. at 122.

The Debtor seeks attorney's fees of $5,950.00. In compliance with the lodestar method, the requested fees are documented by contemporaneous time records detailing the dates, amounts, and specific services provided. (Debtor's Ex. 16). Further, a review of the statement reflects that the billed work all relates to IndyMac's violation of the discharge injunction, and that the time expended is reasonable. See In re Riser, 298 B.R. 469, 473 (Bankr. M.D. Fla. 2003)("Only fees and expenses actually caused by a violation of the discharge injunction are assessable as a sanction therefor."). The Court also finds the applicant's hourly rate to be reasonable based on the prevailing market rate for similar services performed by an attorney with his degree of skill, experience, and reputation. See Blum v. Stenson, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Accordingly, the Court will award attorney's fees in the requested amount of $5,950.00.

**(b) Damages for emotional distress**

Courts have recognized that emotional distress constitutes actual damages. In re Diaz, 2009 WL 3584517 (Bankr. M.D. Fla. Sept. 30, 2009); In re Nibbelink, 403 B.R. 113, 120-21 (Bankr. M.D. Fla. 2009). Further, the legislative history of the discharge injunction recognizes "that the injunction is intended to protect more than financial interests." In re Feldmeier, 335 B.R. 807, 813 (Bankr. D. Or. 2005); see also In re Manzanares, 345 B.R. 773, 794 (Bankr. S.D. Fla 2006)(quoting Feldmeier, 355 B.R. at 814)("Indeed, § 524 is intended to prohibit not just legal action but telephone calls, letters, and all personal contacts; as such, 'the contempt remedy, which provides for an award of 'compensatory damages,' should include compensation for emotional distress suffered by a debtor as a result of a creditor's willful violation of the discharge injunction.'"). (Emphasis supplied).

If conduct is egregious or extreme, emotional distress is expected to occur. In re Nibbelink, 403 B.R. at 120. "Significant emotional distress is readily apparent where the conduct is egregious and corroborating medical evidence is not required." In re Diaz, 2009 WL 3584517 at * 27, see also Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139 1150 (9th Cir. 2004)("even if the violation of the automatic stay was not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm.").

The Debtor's testimony supports the conclusion that IndyMac's repeated attempts to collect its pre-petition debt, by contacting her over the telephone and through the mail, caused her significant emotional distress. The Debtor perceived the telephone calls as threatening and IndyMac's actions compounded the Debtor's embarrassment and stress over having to file for bankruptcy. Further, the April 30, 2010, letter sent by Debtor's counsel to IndyMac, referenced the emotional distress the collection attempts were causing his client "an elderly woman in poor health." (Debtor's Ex. 9). Because the Debtor's emotional distress is readily apparent she is not required to present corroborating medical evidence. See In re Diaz, 2009 WL 3584517 at *27; In re Nibbelink, 403 B.R. at 120; In re Dawson, 390 F.3d at 1150-51.

Accordingly, the Debtor is entitled to actual damages for significant emotional distress in the amount of $5,000.00.

**(c) Award of punitive damages**

"Section 105 constitutes express authority to award punitive damages for contempt to the extent necessary or appropriate to carry out the provisions of the Bankruptcy Code. Section 105

'creates a statutory contempt power distinct from the court's inherent contempt powers.'" WVF Acquisition, 420 B.R at 916 (internal citations omitted); see also Nibbelink, 403 B.R. at 122.

Courts have adopted several different standards for the imposition of punitive damages. Id. at 121; In re Dynamic Tours & Transportation Inc., 359 B.R. 336, 344 (Bankr. M.D. Fla. 2006). Some courts assess punitive damages based on a finding that the creditor acts with actual knowledge of the violation or with reckless disregard of the protected right. See In re Wagner, 74 B.R. 898, 903-04 (Bankr. E.D. Pa. 1987)(quoting Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir. 1978)).("[P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are 'reserved ... for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief.'"). Decisions awarding punitive damages in this context typically consider the following factors: (1) the nature of the violator's conduct; (2) the nature and extent of the harm to the debtor; (3) the violator's ability to pay; (4) the motives of the violator; and (5) any provocation by the debtor. In re Wagner, 74 B.R. at 905-06, see also In re White, 410 B.R. 322, 327 (Bankr. M.D. Fla. 2009)(citing cases); Johnson v. Precision Auto Sales (In re Johnson), 2007 WL 2274715, at *10 (Bankr. N.D. Ala. Aug. 7, 2007); In re Keen, 301 B.R. 749, 755 (Bankr. S.D. Fla. 2003)(citing various cases).

Other cases have assessed punitive damages where maliciousness or bad faith exists. In re Chateaugay Corp., 920 F.2d 183, 186 (2nd Cir. 1990)(citing In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105 (2nd Cir. 1990)). Another standard assesses punitive damages "where an

-14-

arrogant defiance of federal law is demonstrated." Tel-A-Communications Consultants, Inc. v. Auto-Use, 50 B.R. 250, 255 (Bankr. D.Conn. 1985).

The Court finds the appropriate standard in assessing punitive damages is whether the creditor has acted with actual knowledge of the violation or with reckless disregard of the protected right.

Despite having notice of the Debtor's bankruptcy filing and her subsequent discharge, IndyMac continued to contact her over the telephone and through the mail. IndyMac's actions continued despite repeated warnings from Debtor's counsel that its actions constituted a violation of the discharge injunction. In a letter of April 30, 2010, Debtor's counsel even advised that "[y]ou will leave us with little choice but to seek sanctions if you fail to cease dunning her for this discharged obligation." (Debtor's Ex. 9). There is no evidence or allegation of any provocation by the Debtor.

The Court finds that IndyMac's actions show reckless disregard for the discharge injunction provided by the Bankruptcy Code. Accordingly, the Court will assess punitive damages.

The final determination for the Court is to set the appropriate amount of punitive damages. "As a general matter, punitive damages serve both as punishment for wrongful conduct and as a deterrent of future wrongful conduct." In re White, 410 B.R. at 327(citing Exxon Shipping Co. v. Baker, ---U.S. ----, 128 S.Ct. 2605, 2621, 171 L.Ed. 570 (2008)); see also In re Dynamic Tours, 359 B.R. at 344 (citing Flynn v. Internal Revenue Serv. (In re Matter of Flynn), 169 B.R. 1007, 1024 (Bankr. S.D. Ga. 1994)("An award of punitive damages should be measured by the severity

of the offense and set at a level adequate to insure it will punish and deter."). The United States Supreme Court has established the following "guideposts" for punitive damage awards: (1) the degree of reprehensibility of the violator's conduct; (2) the disparity between the harm or potential harm suffered by the debtor and the punitive damages awarded; and (3) the difference between the award granted and the civil penalties imposed in similar cases. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574-575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

In assessing punitive damages it has been reasoned that "sophisticated commercial enterprises have a clear obligation to adjust their programming and procedures and their instruction to employees to handle complex matters correctly." In re McCormack, 203 B.R. 521, 525 (Bankr. N.H. 1996). See also Dynamic Tours, 359 B.R. at 344 (finding that punitive damages of $50,000.00 were warranted regardless of the standard applied because "GE is an international corporation with vast resources capable of employing competent staff to understand and abide by bankruptcy law."). The record reflects that IndyMac continued to contact the Debtor despite having notice of the discharge injunction. The collection attempts continued even after IndyMac was notified twice in writing by Debtor's counsel that its actions were in violation of the discharge injunction. Further, even after the Court continued the hearing on the Motion for Sanctions to allow the parties to engage in settlement negotiations, a September 20, 2010, billing statement was sent to the Debtor. The Debtor also received an October 20, 2010 billing statement after the trial on the Motion for Contempt and Sanctions. (Debtor's Ex. 17).

The purpose of the bankruptcy code is to give the honest debtor a fresh start. See In re Hardy, 97 F.3d at 1388-89(recognizing that § 524 "embodies the 'fresh start' concept of the

bankruptcy code."). The Debtor's testimony was both credible and candid and it is clear that she was distraught by IndyMac's repeated attempts to collect the discharged debt. Thus, although the Debtor received a discharge in May of 2009, she has not yet received the "fresh start" to which she is entitled.

Based on IndyMac's numerous violations of the discharge injunction the Court finds that an award of punitive damages that was requested by the Debtor, $15,000.00, is an appropriate sanction. Hopefully, such an award will help deter IndyMac from engaging in similar future conduct.

Punitive damages of $15,000.00 are well within the ratio of punitive to actual damages found constitutional by the United States Supreme Court. See BMW of North America, Inc. v. Gore, 116 S.Ct. 1589, 1603("In most cases, the ratio will be within the constitutionally acceptable range, and remittitur will not be justified on this basis. When the ratio is a breathtaking 500 to 1, however, the award must surely 'raise a suspicious judicial eyebrow.'")(citation omitted). Such an award is also in line with decisions that have been entered in similar cases dealing with a violation of the automatic stay or discharge injunction. See In re Nibbelink, 403 B.R. at 122 ($15,000); In re White, 410 B.R. at 328 ($10,000); In re Anderson, 430 B.R. 882 (Bankr. S.D. Iowa 2010) ($10,000); In re McCormack, 203 B.R. 521 (Bankr. N.H. 1996) ($10,000).

## Conclusion

IndyMac repeatedly violated the discharge injunction of 11 U.S.C. § 524 by contacting the Debtor through the mail and over the telephone in an attempt to collect its pre-petition debt.

IndyMac's actions occurred despite having notice of the bankruptcy filing and being warned by the Debtor's attorney that its actions were in violation of the discharge injunction.

Based on IndyMac's repeated violations of the discharge injunction, the Court finds it appropriate to award the Debtor compensatory damages of $10,950.00. These damages are comprised of an award of $5,950.00 in attorney's fees, and $5,000.00 for damages in emotional distress. Because IndyMac's actions show reckless disregard for the Bankruptcy Code, the Court also awards punitive damages of $15,000.00.

Accordingly, it is

**ORDERED:**

1. The Debtor's Motion for Contempt and Sanctions is Granted.

2. The Debtor is awarded $5,950.00 in attorney's fee's, $5,000.00 in damages for emotional distress, and $15,000.00 in punitive damages, for a total award of $25,950.00.

3. IndyMac shall pay the Debtor the total amount awarded within twenty (20) days from the date of this order.

Dated this 5 day of April, 2011 in Jacksonville, Florida.

BY THE COURT

_____
Paul M. Glenn
Chief United States Bankruptcy Judge